# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 12, 2007   Decided February 20, 2007

No. 05-3156

UNITED STATES OF AMERICA,
APPELLEE

v.

STERLING MAPP,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00449-01)

*Ketanji B. Jackson*, Assistant Federal Public Defender, argued the cause for the appellant. *A. J. Kramer*, Federal Public Defender, was on brief for the appellant. *Neil H. Jaffee* and *Tony Axam, Jr.*, Assistant Federal Public Defenders, entered appearances.

*Ann K. H. Simon*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III* and *William B. Wiegand*, Assistant United States Attorneys, were on brief for the appellee.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Sterling Mapp (Mapp) was indicted on one charge of possessing with intent to distribute more than one hundred grams of phencyclidine (PCP) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Mapp moved to suppress evidence, arguing that the arresting officers' search of his vehicle—and discovery of PCP—was not conducted "incident to a lawful arrest" and therefore excepted from the Fourth Amendment's warrant requirement under *Thornton v. United States*, 541 U.S. 615 (2004). The district court denied the motion and Mapp entered a conditional guilty plea, reserving the right to appeal the district court's order. Mapp now appeals. As detailed below, we affirm the district court's order denying Mapp's motion to suppress.

**I.**

On September 6, 2004, United States Park Police Officer James Dowd (Dowd) was in his patrol car in the left-turn lane northbound on Martin Luther King Avenue in southeast Washington, D.C. Although the traffic signal showed "a green arrow allowing the left traffic lane to turn left," the Cadillac in front of Dowd—the first car in the turning lane—did not turn left. 5/2/05 Tr. 11. Instead, the Cadillac allowed "the left-turn green arrow [to] expire[]" and "southbound traffic began to move southbound through the intersection." *Id.* At that point, the Cadillac quickly turned left without yielding to southbound traffic, *see id.*, and caused southbound "cars to slam on their brakes." Factual Proffer in Support of Guilty Plea (Factual Proffer), *reprinted in* Mapp Appendix (App.) at 46. After witnessing this maneuver, Dowd followed the Cadillac onto Malcolm X Avenue and radioed the Park Police station for a registration check.

Before receiving a response to his inquiry, Dowd observed the Cadillac quickly pull to a stop on the right side of the street. Dowd responded by pulling his car alongside the Cadillac as its driver—Mapp—began to exit the vehicle and Dowd "informed the driver that he committed a traffic violation" at the last intersection. 5/2/05 Tr. 13. At the same time, a woman—later identified as Keisha Napper (Napper)—exited the passenger side of the Cadillac. Dowd reversed his police cruiser in order to park directly behind the Cadillac, "basically . . . like a normal traffic stop." *Id*. at 14. As Dowd parked, Mapp began walking toward him. Getting out of the cruiser, Dowd asked Mapp for his license and registration and Mapp, continuing to approach Dowd, began feeling around his clothing as if searching for his license. At this point, Dowd noticed Napper walking away from the Cadillac with "a bunch of kids." *Id*. at 16.

As Mapp approached him, Dowd instructed Mapp to stop reaching around and, when Mapp nonetheless continued to do so, Dowd became "a little nervous" and ordered Mapp to place his hands on the cruiser's hood. *Id*. at 14. Finally, Mapp responded that he did not have a driver's license and Dowd placed him under arrest for failure to display a permit, a violation of D.C. Mun. Regs. tit. 18 §§ 100.2 and 421.1. After arresting Mapp, Dowd placed him in the back seat of the cruiser and asked Mapp for his car keys, intending to "do a search incident to arrest." *Id*. at 18. Mapp responded that Napper had taken the keys. *Id*. at 17. About this time, Napper returned, explaining that "she had put the keys with her kids." *Id*. Two other Park Police officers who had responded to the scene went with Napper to retrieve the keys. The officers returned with Napper within "approximately five minutes," *id*. at 34, but without the keys because Napper told them that "she forgot where she put her kids," *id*. at 17. Ultimately, the police discovered that the rear passenger's side door was unlocked and began searching the vehicle.

4

Dowd opened the front passenger door and "immediately [noticed] a black plastic bag . . . [on] the center console" between the driver's and passenger's seats. *Id*. at 19. Inside the bag Dowd observed eight bottles containing a brownish-yellow liquid that he suspected—from past experience—to contain PCP. *See* 9/9/04 Tr. 9. Knowing PCP "to be somewhat dangerous," Dowd asked Napper what was in the bottles and Napper responded, "I think it's drugs." *Id*. at 10–11. Thus, "[b]etween the color [of the liquid], the way they were packaged, and her statements, [Dowd] was fairly certain that [he] was dealing with PCP." *Id*. at 11.[1] At that point, he arrested Mapp and Napper for possessing PCP with intent to distribute and transported them to a Park Police station.[2]

On October 7, 2004, a grand jury charged Mapp on one count of possessing with intent to distribute one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Mapp subsequently moved to suppress the PCP recovered from his car "as the fruit of an illegal seizure and search." Mot. to Suppress Physical Evid. and Statements (Mot. to Suppress), *reprinted in* App. at 22. Mapp argued that the circumstances of his arrest neither posed a threat of evidence destruction nor endangered the safety of the arresting officers because "Mapp was handcuffed and under police control *before* the search took place." App. at 26 (emphasis in original). Relying on language contained in a concurring opinion in *Thornton*, 541 U.S. at 625,

---

[1]The Drug Enforcement Administration (DEA) subsequently tested the contents of the bottles and confirmed that they consisted of 107.8 grams of PCP. *See* Factual Proffer at App. 46.

[2]At the station, Mapp was also given two traffic citations, one for failure to yield and another for failure to display a "permit." *See* 5/2/05 Tr. 16.

Mapp asserted that a vehicle search is not incident to the arrest of a recent occupant of the vehicle unless the police have reason to "believe that evidence of the crime for which they are arresting the person will be in the car." 5/2/05 Tr. 68. But the district court declined "to look through the lens of the concurring opinion" because "the majority was clear" that the police can "search a vehicle when somebody has been arrested, even if that person is out of the vehicle at the time of the first contact." *Id*. at 90.[3] Accordingly, the district court found the search of Mapp's car incident to his lawful arrest and denied the motion to suppress. Mapp entered a conditional guilty plea and the district court sentenced him to sixty-one months' imprisonment. Mapp filed his notice of appeal on September 16, 2005.

## II.

The Fourth Amendment to the United States Constitution prohibits police from "conduct[ing] a search unless they first convince a neutral magistrate that there is probable cause to do so" and obtain a warrant. *New York v. Belton*, 453 U.S. 454, 457

---

[3]The district court rejected Mapp's proposed rule by noting that "when a person cannot produce a driver's license and registration for the vehicle, . . . it is appropriate for [arresting officers] to search [the car] to find out whose vehicle it is," 5/2/05 Tr. 69, and thus Dowd had reason to believe the car contained evidence—such as the vehicle registration—relevant to the crime of arrest, Mapp's failure to present a license or registration, *see id*. at 68–70. The district court also emphasized the "very suspicious" circumstances of Mapp's actions, *id*. at 90, suggesting that Dowd had reason to suspect either destructible evidence or weapons were in the vehicle given Napper's removal of the keys, *see id*. at 96–97. The district court also suggested that when Mapp exited his car and began walking toward Dowd, Dowd "would have a reason to believe [Mapp] was seeking to try to separate himself from the vehicle for some reason." *Id*. at 91.

(1981); *see also* U.S. Const. amend. IV. A warrantless search is permitted, however, if it occurs "incident to a lawful arrest." *See*, *e.g.*, *United States v. Robinson*, 414 U.S. 218, 224 (1973). "To qualify for the exception, (i) the arrest must be lawful, and (ii) the subsequent search must not exceed the scope permitted by the exception." *United States v. Wesley*, 293 F.3d 541, 545 (D.C. Cir. 2002). Mapp challenges the search of his car under both criteria. In reviewing the district court's suppression order, "we review de novo the district court's conclusions of law." *Id*. In contrast, we "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## A.

"To have been lawful, the arrest must have been based upon probable cause to believe that a crime was being committed." *Wesley*, 293 F.3d at 545. A lawful arrest can be based on a misdemeanor offense punishable only by a fine. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 323, 354 (2001). Moreover, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). In determining whether probable cause existed, a reviewing court does not consider "the actual motivations of the individual officers involved." *Id*. at 813.

Mapp first argues that "the alleged D.C. traffic infraction . . . was not supported by probable cause" because "Officer Dowd was able to make the left hand turn behind [him]" onto Malcolm X Avenue. Appellant's Br. at 47, 46.[4] The record, however,

---

[4]The Government contends that Mapp waived his probable cause argument "because it was not presented to the district court." Appellee's Br. at 31. Although Mapp focused below on the proper

indicates that Dowd had probable cause to arrest Mapp for failure to yield. Dowd observed Mapp making an abrupt turn after the green turn signal had expired, causing oncoming traffic to "slam on their brakes," Factual Proffer at App. 46, in order to avoid an accident. 5/2/05 Tr. 10–12. That maneuver provided Dowd with probable cause to believe that a traffic violation—failure to yield—had occurred, *see* D.C. Mun. Regs. tit. 18 § 2208.2,[5] and thus to arrest Mapp, *see Atwater*, 532 U.S. at 354. Mapp contends that his left turn did not create "an immediate hazard" to oncoming traffic, and thus did not constitute an offense, because Dowd managed to turn immediately behind him. *See* Appellant's Br. at 46. But Mapp's contention does not make implausible Dowd's account of the hazard created by Mapp's left turn. Indeed, it is reasonable to conclude that, after slamming on their brakes to avoid colliding with Mapp, oncoming traffic also paused in the intersection long

---

scope of a search incident to arrest under *Thornton*, *see* Mot. to Suppress at App. 24–26; 5/2/05 Tr. 67–95, his motion asserted that "there was no probable cause to support [Mapp's] arrest." Mot. to Suppress at App. 24. At the suppression hearing, Mapp elicited testimony regarding Dowd's ability to follow Mapp through the intersection, *see* 5/2/05 Tr. 27, laying the foundation for his argument that, because "Officer Dowd was able to make the left hand turn behind [Mapp] in the ordinary course, . . . then [Mapp's] actions in turning the car had not created 'an immediate hazard.' " Appellant's Br. at 46. This is sufficient for us to conclude Mapp did not waive his probable cause argument. *Cf. United States v. Redman*, 331 F.3d 982, 986–87 (D.C. Cir. 2003) (defendant waived challenge by changing legal theories at hearing and expressly abandoning initial argument).

[5]Dowd learned of a second traffic violation supporting Mapp's arrest, namely failure to show a driver's license, *see* 5/2/05 Tr. 16, after he stopped Mapp.

enough to permit the police cruiser to pursue Mapp. *See United States v. Broadie*, 452 F.3d 875, 880 (D.C. Cir. 2006); *United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006) ("[A] credibility determination will be found clearly erroneous only if the district court has chosen to credit exceedingly improbable testimony." (internal quotations omitted)). Accordingly, we conclude that Dowd had probable cause to stop Mapp's car.[6]

**B.**

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *Robinson*, 414 U.S. at 224. The Supreme Court outlined "the permissible scope under the Fourth Amendment of a search incident to a lawful arrest" in *Chimel v. California*, 395 U.S. 752, 753 (1969). In *Chimel*, the Court gave two justifications for a search incident to a lawful arrest. *See id.* at 762–63. Specifically:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to

---

[6]Mapp also appears to question Dowd's subjective motivation in initiating a traffic stop, describing "the manifestly spurious nature of the alleged traffic violation." Appellant's Br. at 44; *see also id.* at 47 (citing *United States v. Bullock*, 215 F. Supp. 2d 174, 177 (D.D.C. 2002) (traffic stop was mere pretext)). But the Supreme Court in *Whren* rejected the suggestion that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." 517 U.S. at 813; *cf. Scott v. United States*, 436 U.S. 128, 137 (1978) ("[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an *objective* assessment of an officer's actions in light of the facts and circumstances then known to him." (emphasis added)).

resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered . . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.

*Id*. Thus, a search incident to a lawful arrest includes both the arrestee and his immediate surroundings and is justified by the twin rationales of officer safety and preservation of evidence.

The Court clarified the scope of the exception in *Robinson*, 414 U.S. at 220–23, a case involving a search of a traffic offender. At the outset, the Court refused to limit the "incident to arrest" exception to the "probable fruits or further evidence of the particular crime for which the arrest [was] made." *Id*. at 234. It held that "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found." *Id*. at 235. Instead, the Court crafted a bright-line rule: once an individual is lawfully arrested, both he and his immediate surroundings may be searched consistent with the Fourth Amendment. *See id*. ("It is the fact of the lawful arrest which establishes the authority to search . . . .").

Believing a "familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the . . . interests involved in the specific circumstances they confront," *Belton*, 453 U.S. at 458 (internal quotation omitted), the Court continued to follow the *Robinson* path by establishing another bright-line rule in *Belton*. Because

"articles inside . . . the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or eviden[ce],' " *id*. at 460 (quoting *Chimel*, 395 U.S. at 763), the Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id*. (footnote omitted). In addition, the Court iterated *Robinson*'s holding that a lawful search incident to arrest does not depend upon a case-by-case inquiry into the likelihood that weapons or evidence would in fact be found during the search. *Id*. As long as the arrest of an occupant of a car is lawful, a search of the passenger compartment is reasonable. "Accordingly, even though the reasons for conducting a search incident to arrest, namely 'to disarm and to discover evidence,' may be stronger in some situations than in others, the Government is not obliged to justify each such search in the particular context in which it occurs." *United States v. Abdul-Saboor*, 85 F.3d 664, 667 (D.C. Cir. 1996).

In *Thornton*, the Supreme Court declared another bright-line rule governing the scope of a search incident to arrest. In that case, the defendant exited his vehicle before the police made contact with him, presenting the issue "whether *Belton*'s rule is limited to situations where the officer makes contact with the occupant while the occupant is inside the vehicle." 541 U.S. at 617. The Court determined that "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." *Id*. at 621. Indeed,

> A custodial arrest is fluid and '[t]he danger to the police officer flows from *the fact of the arrest*, and its attendant proximity, stress, and uncertainty.' The stress is no less

> merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of . . . the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation.

*Id.* (quoting *Robinson*, 414 U.S. at 234–35 & n.5) (emphasis and alteration in original) (internal citations omitted). Consequently, the Court "conclude[d] that *Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." *Id.* at 617.

Moreover, the Court continued to stress the need for a bright-line rule "readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment." *Id.* at 622–23. Thus, once the police have probable cause to arrest a "recent occupant" of a vehicle, "it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment," *id.* at 623, noting that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search," *id.* at 622.

According to the record, Dowd's first contact with Mapp occurred as Mapp exited his vehicle, 5/2/05 Tr. at 13–14; Dowd then arrested Mapp at the hood of Dowd's police cruiser, *id.* at 14–15, which was parked behind Mapp's vehicle, *id.* at 14. Thus, Mapp was close enough to his car to justify the search. *See Michigan v. Long*, 463 U.S. 1032, 1035 & n.1 (1983) (noting officers could have searched passenger compartment of car under *Belton* where occupant "met the deputies at the rear of the car"); *United States v. Poggemiller*, 375 F.3d 686, 687–88 (8th Cir.

2004) (defendant was recent occupant when arrested ten to fifteen feet from his car); *cf. Wesley*, 293 F.3d at 549 ("[T]he police may search the passenger compartment of the vehicle without regard to whether the occupant was removed and secured at the time of the search."). Further, the search of Mapp's car, which occurred around ten minutes after he was arrested, was not "so separated in time or by intervening events that the [search] cannot fairly be said to have been incident to the [arrest]."[7] *Abdul-Saboor*, 85 F.3d at 668; *see United States v. Weaver*, 433 F.3d 1104, 1106 (9th Cir. 2006) (ten to fifteen minute delay contemporaneous); *cf. In re Six Hundred Thirty-Nine Thousand Five Hundred and Fifty-Eight Dollars in U. S. Currency*, 955 F.2d 712, 717–18, 717 n.7 (D.C. Cir. 1992)

---

[7]This time estimate comes from Dowd's description of Napper's movements. First, Dowd noticed Napper leaving the scene with her children as Mapp approached him (before Mapp's arrest). 5/2/05 Tr. 16. Napper returned in "approximately five minutes"—after Mapp's arrest for failure to present a driver's license. *Id*. at 32–33. At that point, Dowd asked Napper for the keys to Mapp's car and she escorted two officers in a failed attempt to retrieve the keys, returning again in "approximately five minutes." *Id*. at 34. The police then discovered the unlocked door and began their search. *Id*. Moreover, Mapp's assertion that the search for the car keys was "an extraordinary 'intervening event[],' " Appellant's Br. at 41 (quoting *Abdul-Saboor*, 85 F.3d at 668) (alteration in original), fails because the resulting delay was entirely of Mapp's and Napper's making, *see* 5/2/05 Tr. 17–18. Napper further delayed the search by taking the other officers to retrieve the keys only to decide that "she forgot where she put her kids." *Id*. at 17. Mapp thus "artificially segments his arrest and the search; they were, as a practical matter, one continuous event," *Abdul-Saboor*, 85 F.3d at 669, which included an ongoing search for Mapp's car keys caused by Mapp's and Napper's attempts to frustrate that effort.

(search too remote where it followed arrest by "*at least* thirty minutes").    We conclude that Mapp qualifies as a "recent occupant" under *Thornton* and, accordingly, we find the search of Mapp's vehicle fits easily within the search incident to arrest exception to the Fourth Amendment's warrant requirement.


    For the foregoing reasons, we affirm the district court's denial of Mapp's motion to suppress.

*So ordered.*