Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 6, 2011           Decided July 15, 2011

No. 10-3062

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTWAN C. DELANEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00217)

*Adam H. Kurland*, appointed by the court, argued the cause and filed the briefs for appellant.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *Elizabeth Trosman*, and *John P. Dominguez*, Assistant U.S. Attorneys.

Before: ROGERS, TATEL, and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Following the denial of his motion to suppress evidence seized from his car, Antwan Delaney entered a conditional plea to unlawful possession of a firearm and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1) & (b)(1)(D), and possession of a firearm during a drug trafficking offense, 18 U.S.C. § 924(c)(1).  On appeal, he challenges the district court's finding that he consented to the search of his car, and the district court's refusal at sentencing to consider all of the proffered facts concerning his relevant history and characteristics, *see* 18 U.S.C. § 3553(a)(1).  Delaney fails to show that the district court's credibility finding with regard to the police officers' testimony that he gave consent was based on "'exceedingly improbable testimony'" and thus clearly erroneous, *United States v. Mapp*, 476 F.3d 1012, 1017 (D.C. Cir. 2007) (quoting *United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006)).  A review of the record indicates that the inconsistencies between the suppression testimony and one of the officers' prior statements were not so glaring — if, indeed, they were inconsistencies at all — as to render incredible the officers' testimony that Delaney consented to the search of his car.  Nor did apparent violations of departmental protocols unrelated to Delaney's consent so undermine the officers' credibility that it was clear error for the district court to credit their testimony regarding Delaney's consent.

A remand for resentencing, however, is required, *see United States v. Ayers*, 428 F.3d 312, 315–16 (D.C. Cir. 2005), because the district court must take into account all relevant facts related to a defendant's "history and characteristics," 18 U.S.C. § 3553(a)(1).  The sentencing record reflects that the district court appears to have "misunderstood its sentencing authority" to consider certain proffered facts, *United States v. Mouling*, 557

F.3d 658, 668 (D.C. Cir. 2009), even though the government agrees Delaney properly requested the court do so.

**I.**

At 2:40 a.m. on July 11, 2009, two Metropolitan Police Department ("MPD") officers responded to a report of potential domestic violence on the 500 block of D Street S.E. A female motorist had reported a confrontation with her boyfriend and worried that he might be headed to her home on D Street, possibly to retrieve a sawed off shotgun. When Officers Gomez and O'Donnell arrived at that location, they saw Delaney standing in the street with other officers, in general proximity to a Mercury Sable 4-door sedan. Delaney consented to a pat-down, which revealed no weapons.

Officer Gomez testified before the grand jury[1] that as other police units were departing, "we decided to further investigate the man with the shotgun call," and "[w]e asked Mr. Delaney if the vehicle, if the blue Mercury Sable was his vehicle," to which Delaney replied that it was. Grand Jury Hr'g Tr. 7. When asked, "Now you asked Mr. Delaney if you could search his vehicle?", Officer Gomez responded: "Correct." Then: "And he responded what?" "He didn't have a problem with it." *Id.* at 7–8. According to Officer Gomez, Delaney was not in handcuffs, but rather "[h]e was just standing there talking to us." *Id.* at 8. The prosecutor asked Officer Gomez "what was the tone of voice you used" in asking consent to search the car, and

---

[1] Officer Gomez's grand jury testimony was apparently made available to Delaney's counsel in the district court and became part of the public record in the district court. *See* FED. R. CRIM. P. 6(e)(2)(A) & 6(e)(2)(B); Appellee's Br. 23 n.17. Delaney has included three relevant pages of the grand jury testimony as part of the public record in this court.

Officer Gomez responded, "Same tone I'm using now, just a casual conversation tone." *Id.* But at the subsequent suppression hearing, both Officers O'Donnell and Gomez testified that it was Officer O'Donnell, not Officer Gomez, who had asked and received Delaney's consent to search the car. Neither officer recalled the precise words Delaney used, but Officer O'Donnell recalled that they were to the effect of: "'[T]hat's fine, you can go ahead.'" Tr. Feb. 24, 2010, at 25. Officer Gomez recalled that Delaney stated "almost emphatically that he didn't have a problem with us looking through the vehicle." *Id.* at 82. Both officers testified that as they moved toward the car Delaney began to "weep" or "cry." *Id.* at 14, 72.

Notably, both officers initially spoke of the exchange with Delaney as though they were a single unit: Officer O'Donnell, before clarifying that he was the one who asked the questions, testified that "myself and Officer Gomez asked [Delaney] if this was his car," and that "we further asked if he had a problem if we took a look to make sure there were no firearms inside of the vehicle." *Id.* at 13. Similarly, Officer Gomez testified that when they arrived at the scene, "We asked — we being myself — " before being interrupted and asked to answer only on his own behalf. *Id.* at 70–71. But Officer Gomez continued to respond in the same vein, stating that Delaney gave "us permission to look into the vehicle," that "[i]mmediately after asking for permission, Mr. Delaney advised us that he didn't have a problem with us looking through the vehicle," and that at that point "[w]e began to walk to the vehicle." *Id.* at 71–72. Officer Gomez was again corrected, and thereafter answered in the first person singular, and on cross-examination he explained that it was Officer O'Donnell who had asked the questions.

Officer Gomez further testified at the suppression hearing that after obtaining Delaney's consent, Officer O'Donnell went

to the driver's door while Officer Gomez shined his flashlight through the tinted window of the right rear door and saw a "large rectangular box" that was open on the end facing him, and he saw the "stock" or "butt" of a rifle protruding from this end. *Id.* at 72–73. Officer O'Donnell testified he was in the process of opening the driver's door when he heard Officer Gomez give a numeric code prompting Officer O'Donnell to put Delaney, who was standing with two officers, in handcuffs. Officer Gomez entered the car, placed the box on the hood of the car, and removed a semi-automatic rifle with a scope as well as ammunition clips, loose ammunition, and four small bags of marijuana (packaged, Delaney concedes, "in a manner indicative of commercial distribution," Appellant's Br. 5). Officer Gomez laid the items out on the hood of the car but did not photograph them, an apparent violation of internal MPD protocol for crime scene processing of weapons; another protocol was apparently violated when the firearms were not kept in place until a crime scene specialist arrived. Officer O'Donnell testified that he called for a crime scene unit to process the weapon, and after that was done he placed it on the Sixth District property book.

Delaney was indicted on three counts: being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1) & (b)(1)(D), and possession of a firearm during a drug trafficking offense, 18 U.S.C. § 924(c)(1). He moved to suppress the evidence seized from his car on the ground that he did not consent to the search and that there was no probable cause justifying the search absent consent. The district court credited the officers' testimony notwithstanding Gomez's allegedly inconsistent grand jury hearing testimony and the apparent protocol violations. Accordingly, the district court concluded that Delaney consented to the car search and denied the motion to suppress.

Subsequently, Delaney entered into a conditional plea agreement pursuant to Federal Rule of Criminal Procedure 11(a)(2), preserving his right to appeal the suppression ruling. In the agreement, Delaney acknowledged his understanding that the government did not intend to file a motion for a downward departure and likewise agreed "not to seek a downward departure for any reason from the otherwise applicable guideline range." The district court imposed a sentence of 106 months, representing the very bottom end of the Sentencing Guidelines range and the sentence the government agreed to recommend pursuant to the plea agreement.

**II.**

Valid consent constitutes an exception to the general requirement of the Fourth Amendment of a warrant supported by probable cause. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Delaney challenges the district court's finding that he consented to the search of his car that turned up the firearm and drugs that formed the basis for his convictions. As this finding was based on the district court's assessment of the credibility of Officers O'Donnell and Gomez, our review is for clear error, recognizing that the district court's credibility determination is "'entitled to the greatest deference from this court on appeal.'" *United States v. Broadie*, 452 F.3d 875, 880 (D.C. Cir. 2006) (quoting *United States v. Hart*, 324 F.3d 740, 747 (D.C. Cir. 2003)); *see also United States v. Wilson*, 605 F.3d 985, 1027 (D.C. Cir. 2010).

Relying on the principle that reversal is warranted when a district court credits "exceedingly improbable testimony," *United States v. Mapp*, 476 F.3d 1012, 1017 (D.C. Cir. 2007) (quoting *United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006)), Delaney focuses on what he asserts is the government's failure to establish "consistent evidence on the fundamental

issue as to which officer actually obtained the alleged consent," Appellant's Br. 15. He maintains that the purportedly inconsistent testimony "concerned the sole core issue of the case, an issue so fundamental that any incongruity or inconsistency must be deemed fatal." *Id*. at 8. He also points to other irregularities, such as the officers' procedural failures to document the search and to inventory the rifle. The premise of his main argument is flawed, however.

Specifically, Delaney contends that the "diametrically inconsistent testimony" by Officer Gomez on the question of who — himself or his partner, Officer O'Donnell — sought Delaney's consent for the search "exposes such a fundamental inconsistency that [it] must result in the legal conclusion of insufficient evidence to establish consent as a matter of law." *Id.* at 11–12. But this record does not reveal any major inconsistency. All Delaney can point to are the moments in the grand jury hearing where Officer Gomez is asked, "You asked Mr. Delaney if you could search his vehicle?" and Officer Gomez responds, "Correct," Grand Jury Hr'g Tr. 7, and where, when asked about the tone of voice "you" used, Officer Gomez responds that it was the "[s]ame tone I'm using now." *Id.* at 8. As the government notes, the excerpt of Officer Gomez's grand jury testimony is replete with references to "we" and "us," including his response to the question "And what did *you* do?" *Id.* (emphasis added). Further, the suppression hearing testimony reflects that Officers O'Donnell and Gomez, as partners, tended to describe their actions in the plural "we" even when the action must by its nature have been singular, such as in asking Delaney for consent. Because a fair reading of Officer Gomez's grand jury testimony indicates that he was generally answering the questions on behalf of himself and his partner, Officer O'Donnell, it need not be read as inconsistent with the suppression hearing testimony in view of the context and the inherent ambiguity of the pronoun "you" as to numerosity.

Delaney's emphasis on the government's failure to establish with "consistent evidence" which officer obtained the alleged consent, Appellant's Br. 15, thus lacks force.

Delaney also identifies another alleged discrepancy and contends it, too, is so significant as to undermine the officers' accounts to the point of implausibility. He maintains that the officers offered inconsistent testimony on whether the box containing the shotgun and drugs was observed from the "rear" or the "back" window of his car. Officer Gomez said he did not distinguish between the terms "back" and "rear," a claim Delaney deems incredible on appeal. Delaney states that the "back" window is the large window that spans the rear of the car, whereas the "rear" windows are the two windows on the sides of the rear section of a car. *See* Appellant's Br. 13. But Officer Gomez's grand jury testimony indicates that he used the terms interchangeably, referring to the "back rear passenger compartment of the vehicle," Grand Jury Hr'g Tr. 9, just as in his suppression hearing testimony, suggesting that when he referred during Delaney's detention hearing to a "back" window he was referring to the same window but simply failed to add the word "passenger."

Delaney further contends that the violations of protocols set forth in an MPD General Order — moving the shotgun to the hood of the car before a crime scene technician arrived, and failing to photograph the items before removing them from the car and also from the car's hood — "fundamentally undermine the officers' credibility" and "so undermined the evidence collection procedures so as to make corroboration of the government's version of events impossible." Appellant's Br. 14–15. Although there are cases where an officer's credibility is so impugned as to require exclusion of his testimony, in those cases the problems with the officer's account are numerous and bear directly on the contested issue. *See, e.g.*, *United States v.*

*Henderson*, 463 F.3d 27, 44 (1st Cir. 2006). The district court could reasonably conclude that the policy violations alleged here are collateral to the consent issue and simply do not undermine the credibility of the officers' account of Delaney's consent to the vehicle search.

The issues identified by Delaney, then, do not render the accounts of his consent to search his car so "exceedingly improbable" that the district court clearly erred. *Mapp*, 476 F.3d at 1017; *see also United States v. Johnson*, 519 F.3d 478, 482 (D.C. Cir. 2008). This is neither a case in which empirical evidence contradicts the testimony heard by the district court (as in *Henderson*, 463 F.3d at 44), nor a case in which there is such clear contradiction between the witnesses as would demonstrate clear error to credit either or both witnesses' testimony. The district court acknowledged Delaney's suggestion that it should be very skeptical of the officers' testimony in view of Officer Gomez's grand jury and preliminary hearing testimony[2] and the protocol violations. But upon noting that the more important protocol instructed that the firearm be left in place, the district court concluded that "[d]espite the dents in the government's presentation," the court had "no reason to doubt the testimony . . . by both of the[] officers, that Mr. Delaney gave consent to search the car." Tr. Feb. 25, 2010, at 73. In the district court's words: "The testimony is very clear as to what they said under oath." *Id.* Moreover, unlike this court, the district court had the opportunity to assess the officers' credibility during the suppression hearing. For these reasons we conclude that Delaney has not met his heavy burden to show the district

---

[2] In the district court, Delaney also mentioned a separate D.C. Superior Court detention hearing in which Officer Gomez referred to the "back" window without the qualifications "rear" or "passenger." *See* Tr. Feb. 25, 2010, at 9. This transcript is not part of the record on appeal and we therefore do not consider it.

court's credibility determination was clearly erroneous. *See Broadie*, 452 F.3d at 880.[3]

## III.

Delaney's other challenge is persuasive. He does not dispute the substantive reasonableness of the sentence he received. Rather, he presents the purely legal question whether "the district court misunderstood its sentencing authority," *United States v. Mouling*, 557 F.3d 658, 668 (D.C. Cir. 2009).

Section 3553(a) requires courts to take into account relevant facts related to a defendant's history and characteristics. Other circuits have referenced such matters as a defendant's criminal history (or lack thereof), *United States v. Panice*, 598 F.3d 426, 443 (7th Cir. 2010); age, *United States v. Hernandez*, 604 F.3d 48, 53–54 (2d Cir. 2010); efforts at rehabilitation, *id*.; and any efforts to cooperate with the government, *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir.), *cert. denied*, 549 U.S. 882 (2006). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661; *see United States v. Anderson*, 632 F.3d 1264, 1270 (D.C. Cir. 2011) (citing 18 U.S.C. § 3661; *United States v. Tucker*, 404 U.S. 443 (1972)). A review of the authorities Delaney cites, including our own, as well as the sealed sentencing hearing, reveals that Delaney has

---

[3] The court does not reach the government's alternative argument, raised only in a footnote, *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008); *see also Bush v. District of Columbia*, 595 F.3d 384, 388 (D.C. Cir. 2010), that this court should affirm because the weapon was visible in "plain view" from the rear passenger side window.

made "some record showing," *Mouling*, 557 F.3d at 668, that "leaves us in doubt as to whether the court considered [all] the . . . sentencing factors in § 3553(a), *Ayers*, 428 F.3d at 315.

[REDACTED:

13

END]

Accordingly, we affirm the judgment of conviction with regard to Delaney's challenge to the denial of his motion to

suppress and we vacate the sentence and remand the case to the district court for resentencing. *See Ayers*, 428 F.3d at 315–16.