# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 26, 2007        Decided June 1, 2007

No. 06-3029

UNITED STATES OF AMERICA,
APPELLEE

v.

SHAWN A. SOUTHERLAND,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00216-01)

*Rita B. Bosworth*, Assistant Federal Public Defender, argued the cause  for appellant.  With her on the briefs was *A. J. Kramer*, Federal Public Defender.  *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III* and *Martin Carpenter*, Assistant U.S. Attorneys.

Before: SENTELLE, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Police officers stopped appellant Shawn Southerland after they observed the front license plate of his vehicle on the dashboard. He was subsequently arrested after a computer check indicated that his license had been suspended. After an inventory search of the vehicle revealed a loaded handgun, he was charged with illegal possession of the handgun. He filed a motion to suppress evidence of the handgun, arguing that both the stop of his vehicle and his subsequent arrest were unlawful. The district court denied the motion. Because we conclude that the stop was proper and probable cause existed for the arrest, we affirm.

## I. Background

Early on an April evening in 2003 two Washington, D.C., Metropolitan Police Department ("MPD") police officers patrolling in a police vehicle in the Northeast quadrant of the city observed a green Cadillac approaching them from the opposite direction. The officers noticed that the front license plate of the vehicle, issued by the State of Maryland, was placed on the dashboard. Believing this placement of the plate to be a violation of Maryland traffic laws, the officers stopped the vehicle. The driver and sole occupant of the vehicle was the appellant, Shawn Southerland. After receipt of his driver's license, the officers radioed the dispatcher and requested that Southerland's license number be run through the Washington Area Law Enforcement System ("WALES"). The dispatcher reported that Southerland's license had been suspended. Southerland was then arrested for operating a vehicle after suspension. Following the arrest, an inventory search of the Cadillac revealed, *inter alia*, a loaded .45 caliber semi-automatic handgun. The officers charged Southerland with possessing it illegally. Southerland filed a motion to suppress the evidence

found at the time of his arrest, arguing that both the initial stop of his vehicle and his subsequent arrest were unlawful. The district court denied the motion. Southerland then entered a conditional plea of guilty to the firearms charge and was sentenced to 57 months in prison.

## II. Discussion

### A. *The Stop*

At the hearing on Southerland's suppression motion the two officers testified as to the circumstances surrounding the stop of Southerland's Cadillac. Both officers said that upon encountering the Cadillac they observed a license plate on the dashboard, but no license plate on the front bumper. The first officer to testify stated that Southerland was stopped for "an improperly displayed front tag," and upon further questioning stated that the display was improper because the tag was not "on the front bumper" where it "has to be." When questioned the second officer also stated that the stop was conducted because the front plate "was not placed on the front bumper where it was supposed to be properly placed." The district court, in rejecting Southerland's claim that the stop was unlawful, did not specifically refer to the officers' testimony. Rather, the court noted that under Maryland law license plates must be "[s]ecurely fastened" and "clearly visible." *United States v. Southerland*, Crim. No. 03-216, slip op. at 2-3 (D.D.C. Apr. 20, 2005) (quoting MD. CODE ANN., TRANSP. § 13-411(c)(2)). Finding from the "evidence presented" to it that Southerland's front license plate was neither "securely fastened" nor "clearly visible," the court held that the plate was not displayed in accordance with Maryland law and therefore the stop was lawful.

4

Southerland now argues that there is no evidence in the record to support the district court's finding that the license plate was not securely fastened or clearly visible, asserting that the officers' only testimony was that the plate was on the dashboard. He further argues that the police officers' "subjective" belief that a violation had occurred because the plate was not attached to the bumper was not a reasonable basis for the stop. In support of these arguments Southerland relies chiefly on *United States v. Hill*, 131 F.3d 1056 (D.C. Cir. 1997). In that case the police stopped Hill's vehicle for not having a Vehicle Identification Number ("VIN") on its temporary tags. Events following the stop led to Hill's arrest for unlawful possession of a firearm. Hill filed a motion to suppress evidence of the firearm, arguing that the stop was unlawful. During the hearing on the motion he produced the temporary tags which contained a VIN. The district court stated that it could not say whether or not the tags had a VIN at the time of the stop, but it accepted as true the officer's testimony that he believed that the tag did not have a VIN, and denied the motion. On appeal, we noted that these statements by the district court showed that it had "applied a subjective reasonableness test to the officer's decision to stop Hill's car, rather than the objective reasonableness test that is required in such situations." *Id*. at 1060. The case was remanded for the district court to make a determination of whether it was objectively reasonable for the officer to conclude that the tag did not have a VIN.

Southerland argues that similarly in his case the district court never made any determination whether it was objectively reasonable for the officers to determine that the plate on the dashboard was improperly displayed. Indeed, he asserts that under Maryland law a front license plate only needs to be "attached" and "visible," and the officers' belief that the plate was required to be placed on the bumper was subjective and therefore not reasonable under *Hill*. The district court erred, he

continues, in substituting its own conclusions, *i.e.*, that the tag was not "securely attached" nor "clearly visible," for those of the officers.

Southerland correctly states that under *Hill* the question to be answered is whether it was objectively reasonable for the officers who observed his vehicle to conclude that a traffic violation had occurred. The observations made by the officers leading to the stop are findings of fact for the hearing judge to determine and we will disturb those findings only if they are clearly erroneous. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). But we review independently whether, acting on those observations, it was objectively reasonable for the police to stop Southerland's vehicle. *Id.* at 696-97.

An automobile stop must not be unreasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 810 (1996). Whether a stop is reasonable turns on whether the facts "viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion" that a traffic violation has occurred. *See Ornelas* at 696. The police may initiate a stop even if the traffic violation is a minor one. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (there was "no question about the propriety" of a stop for an expired license plate). Here, one of the officers testified that Southerland's Cadillac was stopped because the license plate observed on the dashboard was "improperly displayed," while the other officer testified that the plate was not "properly placed." At the same time both officers testified to their belief that Maryland law requires that the plate be placed on the bumper. As the prosecution concedes, Maryland law does not mandate that front license plates be affixed to the bumper, but the law of that state does require that vehicles have license plates "on the front" and that these plates be "[i]n a horizontal position" and "[s]ecurely fastened" and "clearly visible." MD. CODE ANN., TRANSP. § 13-

411(a), (c). Maryland's two neighboring jurisdictions, the District of Columbia and Virginia, have similar requirements. D.C. Mun. Regs. tit. 18, § 422; Va. Code Ann. § 46.2-716. In light of these requirements we think it objectively reasonable for the officers to suspect that Southerland's dashboard plate was in violation of Maryland law, even assuming they were mistaken that the law required display of the front plate on the bumper. *Cf. United States v. Bookhardt*, 277 F.3d 558 (D.C. Cir. 2002) (upholding arrest where original ground–expired license–was invalid but officers had probable cause to arrest for a different offense–reckless driving). The district court's determination that the stop was lawful is therefore affirmed.

B. *The Arrest*

During the proceedings on his suppression motion Southerland argued that the officers did not have probable cause to arrest him for a suspended license. In support of this argument he introduced testimony from the District of Columbia Department of Motor Vehicles ("DMV"), including a so-called "5 Year Record Request" from 2004, indicating that at the time of the arrest his license had not been suspended. The government then introduced its own "5 Year Record Request" from 2003 indicating that at the time of the arrest Southerland's license had in fact been suspended. Also at the hearing both officers testified that a WALES check on Southerland's license indicated that his license had been suspended. The district court, in determining that the arrest was proper, stated that although there were conflicting records from the DMV, any errors were made by the DMV and not by the police. *Southerland*, slip op. at 5. Consequently, the court found that "the officer's reliance on the WALES report was objectively reasonable and lacked any indicia of bad faith." *Id.*

On appeal Southerland argues in effect that the weight of the evidence presented during the suppression hearing establishes that the DMV's records did not show his license was ever suspended and consequently no probable cause existed for his arrest. We disagree. Initially we note that the district court, after reviewing the evidence, stated that there were "conflicting records from the DMV" resulting in a "genuine dispute" as to whether or not Southerland's license was suspended at the time of the stop. *Id.* But even if Southerland had definitively established that his license was not suspended at the time of the arrest, we would nevertheless conclude that the officers had probable cause to arrest him.

Probable cause "must be determined objectively from the facts and circumstances known to the officers at the time of the arrest." *Bookhardt*, 277 F.3d at 565. These facts and circumstances must be sufficient to warrant a prudent person's believing that an offense has been committed. *United States v. Wesley*, 293 F.3d 541, 545 (D.C. Cir. 2002) (citation omitted). Both officers testified that at the time of the stop the WALES system reported that Southerland's license was suspended. WALES is a database maintained by the Metropolitan Police Department that contains, *inter alia*, motor vehicle information such as drivers' licenses and vehicle registrations. *See United States v. Hutchinson*, 408 F.3d 796, 799 (D.C. Cir. 2005). Information from the DMV database is uploaded to the WALES system. The district court listed as one of its "factual findings" the indication from the WALES computer check that Southerland's license had been suspended. *Southerland*, slip op. at 1-2. In relying on this information and arresting Southerland, the district court also determined that the officers acted in good faith. *Id.* at 5. *See Hill v. California*, 401 U.S. 797, 803-04 (1971) (probable cause to arrest where "officers in good faith believed Miller was Hill and arrested him"). We conclude that regardless of whether Southerland's license was in fact

suspended, it was objectively reasonable for the officers to rely on the information received from WALES and to believe that Southerland's license had been suspended. *See United States v. Coplin*, 463 F.3d 96, 102 (1st Cir. 2006) (although defendant's license not suspended at time of police stop, it was objectively reasonable for officers to believe, from information on the police cruiser's computer, that it was suspended). Accordingly, probable cause existed for the arrest and we uphold the district court's determination that the arrest was proper.

At oral argument Southerland asserted, apparently for the first time, that probable cause for his arrest was negated by the so-called "fellow-officer doctrine." *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971). Because this argument was raised for the first time at oral argument, it is forfeited. *See United States v. Johnson*, 216 F.3d 1162, 1167-68 (D.C. Cir. 2000). In any event the argument has no merit.

Southerland's claim appears to be that the DMV is equal to "law enforcement," *i.e.*, it is a "fellow officer" of the MPD, and therefore the error by the DMV in reporting his license to the MPD as suspended is a law enforcement error. Under *Whiteley*, evidence resulting from a search based on the fellow officer's erroneous information is subject to evidentiary exclusion per the exclusionary rule, s*ee* 401 U.S. at 568-69. But in *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court discussed the exclusionary rule's purpose of deterring unlawful police conduct. While questioning whether the rule does in fact have a deterrent effect on police misconduct, the Court stated that the rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." 468 U.S. at 918-19. The Supreme Court itself resolved any apparent tension between *Whiteley* and *Leon* in *Arizona v. Evans*, 514 U.S. 1 (1995).

In *Evans*, the Court first discussed the facts of the *Whiteley* decision in which the arrest, held to be illegal, had been based on an outstanding warrant coupled with a subsequent radio bulletin, which taken together were "insufficient to support an independent judicial assessment of probable cause." *Id.* at 12 (citing *Whiteley*, 401 U.S. at 568). On those facts, the *Whiteley* Court had concluded that "'an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.'" *Id.* (quoting *Whiteley*, 401 U.S. at 568). That said, the *Evans* Court stated that, "Although *Whiteley* clearly retains relevance in determining whether police officers have violated the Fourth Amendment, its precedential value regarding application of the exclusionary rule is dubious." *Id.* (citation omitted). While *Whiteley* had "treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule to evidence secured incident to that violation," the *Evans* Court made clear that "[s]ubsequent case law has rejected this reflexive application of the exclusionary rule." *Id.* (citing *Illinois v. Krull*, 480 U.S. 340 (1987); *Leon*, 468 U.S. 897; *United States v. Calandra*, 414 U.S. 338 (1974)). Relying specifically on *Leon*, the *Evans* Court held that "the issue of exclusion is separate from whether the Fourth Amendment has been violated, and exclusion is appropriate only if the remedial objectives of the rule are thought most efficaciously served." *Id.* at 13-14 (citing *Leon*, 468 U.S. at 906, and *Calandra*, 414 U.S. at 348).

In the present case, as in *Leon* and *Evans*, there is no deterrent function to be served. We see no reason why officers should be deterred from relying upon the common tools of the traffic officer in determining whether there is probable cause to believe a driver's license has been suspended. We offer no opinion as to whether the DMV is "a fellow officer" for purposes of the application of *Whiteley*. Our conclusion that it

was objectively reasonable for the officers to rely on the WALES system and arrest Southerland precludes, under *Leon* and *Evans*, application of the exclusionary rule in this case.

### III.  Conclusion

We conclude that the stop of appellant was proper and probable cause existed for his arrest.  The decision of the district court is therefore affirmed.

*So ordered.*