# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 15, 2007          Decided August 10, 2007

No. 06-3030

UNITED STATES OF AMERICA,
APPELLEE

v.

FREDERICK E. BOOKER, *A/K/A* CHARLES BOOKER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00225-01)

*A. J. Kramer*, Federal Public Defender, argued the cause for the appellant.

*Mary B. McCord*, Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III*, *Lisa H. Schertler* and *John P. Gidez*, Assistant United States Attorneys, were on brief.

Before: GINSBURG, *Chief Judge*, and HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Dissenting opinion filed by *Circuit Judge* ROGERS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Frederick E. Booker pleaded guilty to one count of possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). Booker now appeals the district court's denial of his motion to suppress evidence seized from his vehicle following his arrest for driving without a permit on the grounds that both the traffic stop and the search of his vehicle violated the Fourth Amendment to the United States Constitution. He also appeals his guilty plea on the ground that it lacked a sufficient factual basis. For the reasons set forth below, we affirm the district court.

**I.**

On May 7, 2003, Booker, with an unknown passenger, was driving a white Crown Victoria southbound on Seventh Street in northeast Washington D.C. at approximately 4:00 p.m. Three members of the Metropolitan Police Department (MPD)—Officers Bryan Wymbs, Gary Glenn and Bruce Garrett[1]—passed the Crown Victoria at the intersection of Seventh Street and Buchanan Street as their unmarked police car was traveling in the opposite direction. They noticed that the vehicle's front license tag "was not displayed in brackets on the front of the car but, instead, was placed inside the windshield on the front right side." *United States v. Booker*, Crim. No. 03-225, slip op. at 2 (D.D.C. Oct. 25, 2005). Believing the license plate was improperly displayed, the officers decided to conduct a traffic stop. They continued driving in the direction they had been traveling until they could "make a series of turns," Tr. 11/18/03, at 8, and reverse direction. In the meantime, Booker's vehicle had "made a series of turns" inside a "U shape[d]

---

[1]The officers were members of the MPD Fifth District's automobile theft unit which "investigate[s] the theft of stolen autos and also look[s] for fraudulent tags, things of that nature." Tr. 11/18/03, at 5.

development"[2] and was "approximately three to four blocks away." *Id.* As a result, the officers did not catch up to Booker's vehicle until they "came around [a] corner," *id.* at 18, and found it parked at the curb in front of 4342 Varnum Place N.E.[3] By the time they "pulled up to the Crown Victoria, with the front of their car just next to, but not overlapping, [its] rear bumper," *Booker*, slip op. at 2, Booker and the passenger had exited, closed the door and begun walking away from it, *id.* Officer Wymbs then "alighted from the unmarked police car, identified himself as a police officer, and ordered [] Booker and his passenger to stop." *Id.* The passenger fled and Officer Glenn attempted—without success—to apprehend him. Meanwhile, Officer Wymbs grabbed Booker by the arm about "three steps away from the car," *id.* at 5, and handcuffed him. He testified that at that moment Booker was not arrested but instead he "was plac[ing] [Booker] in handcuffs for [the officers'] safety" because "the passenger of the vehicle exited the vehicle running [sic] holding his waistband area." Tr. 11/18/03, at 24. Shortly thereafter, Officer Glenn returned without the passenger and inquired whether Booker had a license. When Booker responded that he did not, he was arrested for driving without a permit and "placed on the curb alongside the vehicle." *Id.* at 12. After his arrest, the officers searched the vehicle and discovered a "book bag," *Booker*, slip op. at 3, that contained an Intratec 9mm Luger semiautomatic pistol, a Ruger 9mm semiautomatic

---

[2]The development consists of Varnum Place N.E., Varnum Street N.E. and Seventh Street N.E. *See* Mapquest, Maps, www.mapquest.com (search for "4342 Varnum Place N.E., Washington, D.C.") (last visited July 5, 2007).

[3]Contrary to Officer Wymbs's testimony, *see* Tr. 11/18/03, at 9 ("The vehicle stopped . . . in front of 4342 Varnum Street."), 4342 Varnum *Street* does not exist. *See* Mapquest, Maps, www.mapquest.com (search for "4342 Varnum Street N.E., Washington, D.C.") (last visited July 5, 2007).

pistol, 9mm ammunition and a large ziplock bag holding 79 smaller ziplock bags of marijuana totaling 51 grams, Tr. 10/31/05, at 4, 8. The officers also recovered two cellular telephones and almost $1700 in cash from Booker's person. *Id.* at 8.

On May 29, 2003, Booker was charged by indictment with one count of possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count 1) and one count of using, carrying and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count 2). On November 18, 2003, the district court held a suppression hearing and granted Booker's motion to suppress the evidence seized from his vehicle, concluding that the search was unlawful under the United States Supreme Court's decisions in *New York v. Belton*, 453 U.S. 454 (1981), and *Chimel v. California*, 395 U.S. 752 (1969). The Government appealed but before the parties filed briefs, they jointly moved to remand to the district court for reconsideration in light of the Supreme Court's decision in *Thornton v. United States*, 541 U.S. 615 (2004). On October 19, 2004, we vacated the district court's order and remanded for further consideration. Just over one year later, the district court, relying on *Thornton*, denied Booker's motion to suppress.

At an October 31, 2005 plea hearing, Booker entered a conditional guilty plea to Count 1.[4] In response to the district court's question, "In your own words, not worrying what the statute says, what is it that you would plead guilty to?" Booker responded, "The possession." Tr. 10/31/05, at 4. The court then asked, "Is it possession of marijuana?" to which Booker replied, "Yes." *Id.* The court also questioned Booker about the

---

[4]The plea agreement expressly reserved Booker's right to appeal the district court's denial of his motion to suppress pursuant to Federal Rule of Criminal Procedure 11(a)(2).

substance of the plea agreement, after which the court outlined the "facts on which the plea of guilty would be entered":

> [O]n May 7th, 2003, at about four p.m. in the vicinity of 4342 Varnum Place Northeast, Washington D.C., the defendant was seen by a Metropolitan Police Department officer driving a white Ford Crown Victoria with a D.C. temporary tag inside of the front windshield of the dashboard.
>
> The officers made a U turn and began to follow the defendant. The defendant stopped and parked the car. The defendant [sic] is the driver and his front seat passenger both left the vehicle, closed the door, and the defendant was subsequently stopped by the police.
>
> The defendant told the police he did not have a license and was placed under arrest for driving without a permit. In the subsequent search incident to arrest, officers searched the car and recovered $1,695.82 in cash, two cell phones, an Intratec 9mm Luger gun, a Ruger 9mm gun, 9mm ammunition and 79 zips containing 51 grams of marijuana.

*Id.* at 7-8. Later in the plea colloquy, the following exchange took place:

> THE COURT: Okay. Mr. Booker, are you entering a guilty plea because you're guilty or because you just want to get it over with?
> [Booker]: I want to get it over with.
> THE COURT: Right. But are you guilty?
> [Booker]: No.
> THE COURT: You're not guilty because they shouldn't have searched the car?
> [Booker]: Yes.
> THE COURT: Okay. But if they could lawfully search the car, was the bag yours?

[Booker]: Yes.
THE COURT: All right. I think I can take that as enough for my purposes.

*Id.* 9-10. Finally, the court asked, "Mr. Booker, how do you plead today to the charge of unlawful possession with intent to distribute cannabis?" *Id.* at 11. Booker responded, "Guilty." *Id.*

On February 3, 2006, the district court sentenced Booker to time served (approximately six months), two years' supervised release and a $100 assessment. This appeal followed.

## II.

We address separately Booker's Fourth Amendment and guilty plea claims.

### A. *Fourth Amendment Claims*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Amendment is reasonableness . . . ." *United States v. Askew*, 482 F.3d 532, 538 (D.C. Cir. 2007). Booker argues that both the traffic stop and the search of his vehicle were unreasonable. We review *de novo* whether the police had reasonable suspicion to effect the traffic stop, *United States v. Hill*, 131 F.3d 1056, 1059 & n.2 (D.C. Cir. 1997), and probable cause to search the vehicle, *United States v. Christian*, 187 F.3d 663, 666 (D.C. Cir. 1999). "[W]e review the district court's findings of historical fact only for clear error, [giving] due weight to inferences drawn from those facts and to the court's determinations of witness credibility." *United States v. Brown*, 334 F.3d 1161, 1164 (D.C. Cir. 2003) (internal quotations omitted).

## 1. Traffic Stop

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Thus, a traffic stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. While the Fourth Amendment "does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one," *United States v. Mitchell*, 951 F.2d 1291, 1295 (D.C. Cir. 1991), the facts surrounding the stop must "'be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'" *Hill*, 131 F.3d at 1059 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)) (internal quotation omitted). "In other words, reasonable suspicion to stop and search a motorist depends on 'the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion.'" *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

A finding of reasonable suspicion does not demand "a meticulously accurate appraisal" of the facts. *United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006). Indeed, "[s]tops premised on mistakes of fact . . . generally have been held constitutional so long as the mistake is objectively reasonable." *Id.* (although defendant's driver's license valid, traffic stop objectively reasonable because police cruiser computer indicated license suspended); *see also United States v. Miguel*, 368 F.3d 1150, 1153-54 (9th Cir. 2004) (although vehicle properly registered, traffic stop objectively reasonable because police cruiser computer indicated registration expired). In *Hill*, for

example, the police stopped the vehicle in which the defendant was a passenger because they believed its temporary D.C. tags lacked a Vehicle Identification Number (VIN). 131 F.3d at 1058. Although the district court "concluded that it was impossible to determine whether Hill's temporary tags actually had a VIN on them at the time Hill's car was stopped," *id.* at 1060, it denied the defendant's motion to suppress "on the ground that the police officer that stopped Hill's car believed that he had violated the traffic laws," *id.* at 1059. Believing that the district court had "applied a subjective reasonableness test to the officer's decision to stop Hill's car, rather than the objective reasonableness test that is required in such situations," *id.* at 1060, we reversed the district court. We explained that

> the record . . . contain[ed] no information regarding the conditions under which the officer first observed Hill's car—*e.g.*, how far away the police cruiser was from Hill's car at the time the officer first observed the tags, the quality of the lighting, how quickly Hill's car was moving, etc.—and whether, given those conditions, it was objectively reasonable for the officer to conclude that the tags were missing a VIN.

*Id.* We also observed that

> [i]t was not necessary for the court to determine whether or not a VIN actually appeared on Hill's temporary tags at the time of the traffic stop. *Even if the court assumed that . . . the tags contained a VIN at the time of the stop*, the stop was still permissible as long as the officer's belief that the VIN was missing was objectively reasonable.

*Id.* at 1060 n.3 (emphasis added).

Unlike stops premised on mistakes of fact, "[s]tops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional." *Coplin*, 463 F.3d at 101;

*see also United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006); *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006). *But see United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006) ("We have held, however, that neither mistake of law nor mistake of fact renders a traffic stop illegal so long as the officer's actions were objectively reasonable in the circumstances."). A stop is lawful despite a mistake of law, however, if an objectively valid basis for the stop nonetheless exists. *United States v. Southerland*, 486 F.3d 1355 (D.C. Cir. 2007); *see also United States v. Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006) ("In situations where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed by the cited traffic-code provision."); *cf. Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *United States v. Bookhardt*, 277 F.3d 558, 566 (D.C. Cir. 2002) (probable cause to arrest exists even if arresting officer made "honest mistake of law" so long as "objectively valid ground" for arrest exists). In *Southerland*, two MPD officers conducted a traffic stop because they observed a Maryland license plate on the dashboard of the defendant's vehicle. *Id.* at 1357. Both officers "testified to their belief that Maryland law requires that the plate be placed on the bumper." *Id.* at 1359. The prosecution, however, conceded that the officers were mistaken—Maryland law in fact requires only that the plate be "on the front" of the vehicle, "in a horizontal position," "securely fastened" and "clearly visible." *Id.* (internal quotations and alterations omitted). We nevertheless held that "[i]n light of [Maryland's] requirements" that the plate be "securely fastened" and "clearly visible," the officers reasonably conducted the stop "even assuming they were mistaken that the law required display of the

front plate on the bumper." *Id.* (citing *Bookhardt*, 277 F.3d 558).

Here, the police officers conducted a traffic stop because, when they passed Booker's vehicle traveling in the opposite direction, they observed a "temporary tag," Tr. 11/18/03, at 26, displayed "[i]n the windshield on the front right side" rather than in a "bracket" on the front bumper, *id.* at 6. The district court, however, found that a "dealers' plate" was affixed to the rear of Booker's vehicle,[5] *id.* at 72, and subsection 422.2 of title 18 of the D.C. Code of Municipal Regulations provides: "Motorized . . . vehicles identified by a dealer's tag . . . shall display *only one (1)* valid identification tag *on the rear of the vehicle*." D.C. Mun. Reg. § 18-422.2 (emphases added). Nevertheless, the district court held that the officers' decision to stop Booker's vehicle was objectively reasonable. The court explained that it was "undisputed" that the front tag was improperly displayed regardless whether it was a "regular tag[]" or a "dealer tag[]" and, thus, "the officers' initial sighting of the Crown Victoria gave them reason to believe that it was operating in violation of the D.C. Code requirements for tags." *Booker*, slip op. at 9. The court also concluded that there was "no basis to fault the officers for having failed to study the rear tag and realize that it might have been a dealer tag" because "after making a U-turn and pulling up next to the Crown Victoria, the officers' attention was distracted by the immediate departures of the driver and

---

[5]The record contains no evidence that a dealer's tag was in fact on the rear of Booker's vehicle. Indeed, the Dealer Temporary Tag Status Report (DTTSR) that Booker introduced during the suppression hearing simply manifested that a dealer's tag was *issued*. *See* DTTSR at 1 (Nov. 13, 2003) (JA 102) ("Dealer Temporary Tag" issued for Crown Victoria on May 6, 2003 and expired on June 5, 2003). The Government, however, did not challenge the district court's finding at the suppression hearing nor in its brief to us.

passenger; indeed, when the passenger took flight, their attention was understandably diverted." *Id.* 9-10.

Booker argues that "there was no probable cause to stop him for any [traffic] violation because the tags on the car did not actually violate any regulation, and . . . a stop based on such a mistake of law is invalid." Reply Br. at 1. Specifically, he contends that D.C. Mun. Reg. § 18-422.4—which requires "[o]wner's identification tags" to be "securely fastened"[6]—does not apply to the dealer's tag located "[i]n the windshield on the front right side" of his vehicle, Tr. 11/18/03, at 6. He also maintains that whether the front tag was properly displayed is irrelevant because the dealer's tag displayed on the rear of the vehicle complied with subsection 422.2. Finally, he claims the record does not support the court's conclusion that the officers were too "distracted" to notice the properly displayed dealer's tag. The Government makes two arguments: (1) subsection 18-422.2 provides that there need be only one dealer's tag on the rear of the vehicle so that a temporary tag on the front violates subsection 18-422.2, and (2) because the police had already seen "an illegally displayed front tag," they "still would have had a basis to investigate that criminal violation, whether or not they had realized that there was a valid dealer tag on the rear of the car." Appellee's Br. 16, 19 & n.13.

---

[6]Subsection 422.4 provides:

Owner's identification tags shall at all times be securely fastened in a horizontal position to the vehicle for which they are issued so as to prevent the tags from swinging and at a height of not less than twelve inches (12 in.) from the ground, measuring from the bottom of the tags, in a place and position to be clearly visible.

D.C. Mun. Reg. § 18-422.4.

We agree with the district court that the traffic stop was objectively reasonable. The officers here, like the officers in *Southerland*, conducted a traffic stop because they mistakenly believed that license plates must be displayed on the front and rear bumpers of a vehicle. Tr. 11/18/03, at 6. Notwithstanding Booker had in fact committed no traffic violation—a dealer's tag was properly displayed on the rear of the vehicle—the officers' mistaken belief to the contrary when they first saw the license plate displayed in Booker's windshield was objectively reasonable and the traffic stop was therefore lawful. *See United States v. Glover*, 851 A.2d 473, 476 (D.C. 2004) (police had "objective reason" to believe driver violated D.C. Code by "propp[ing] up" tag against front windshield rather than "securely fasten[ing]" it to front of car). The district court also concluded that the police officers reasonably failed to notice the rear tag because they were "distracted" when they approached Booker's vehicle. *See Hill*, 131 F.3d at 1060 n.3 ("Even if the court assumed that . . . the tags contained a VIN at the time of the stop, the stop was still permissible as long as the officer's belief that the VIN was missing was objectively reasonable."). While the officers did not testify regarding the rear tag, we believe the record supports the inference the district court drew that their failure to notice the rear tag was reasonable. *See Brown*, 334 F.3d at 1164 ("[W]e . . . give due weight to inferences drawn from th[e] facts." (internal quotation omitted)). By the time the officers reversed direction and began pursuit, Booker's vehicle had "made a series of turns" inside a "U shape[d] development" and was "approximately three to four blocks away." Tr. 11/18/03, at 8. Consequently, the officers were not close enough to observe the vehicle's rear bumper until they "came around [a] corner" and saw Booker and his passenger exiting the parked vehicle.[7] *See id.* at 17-18. At that

---

[7]The dissent suggests that Booker's vehicle stopped because the officers "'pulled directly behind it.'" Dis. at 3 (quoting Tr. 11/18/03,

point, the officers parked their vehicle "alongside" Booker's, *id.* at 16, and reasonably focused their attention on the exiting occupants. Accordingly, their failure to notice the rear tag was an objectively reasonable mistake of fact.[8]

To sum up, although Booker had not violated any law regarding the display of tags, the officers reasonably thought initially that he had and then, again, reasonably, failed to recognize that he had not.

---

at 8 (alteration and emphasis omitted)). It ignores, however, Officer Wymbs's testimony that when the officers "c[aught] up" to Booker's vehicle, it had already parked. Tr. 11/18/03, at 9 ("Q. Did [Booker's vehicle] stop pursuant to any efforts you made to stop it or did it stop by itself? A. It stopped by itself."); *see also id.* at 7-8 ("Q. When you said that you got behind the vehicle, does that mean you made a U turn? A. We made a U turn, that's correct. Q. Were you directly behind the vehicle once you made the U turn? A. No."). Moreover, because Booker did not stop in response to the police, the officers reasonably assumed that Booker and his passenger would not remain at the vehicle and reasonably focused on stopping them. Whether Booker's passenger fled as the officers parked their vehicle and got out is, contrary to the dissent's assertion, immaterial. *See* Dis. at 5.

[8]In a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), the Government argued that both the front and rear tags were "special use identification tags." Letter from Jeffrey A. Taylor, United States Attorney, to Mark J. Langer, Clerk 2-3 (May 17, 2007). We disagree. "Special use tags may be issued under circumstances in which it would be unreasonable or impractical to obtain a registration for a motor vehicle." D.C. Mun. Reg. § 426.2. Section 426.5 of the D.C. Municipal Regulations states that "[s]pecial use tags shall be issued for a period *not to exceed twenty (20) days*." *Id.* § 426.5 (emphasis added). According to the DTTSR Booker introduced during the suppression hearing, the dealer's tag on Booker's vehicle expired in *thirty* days. DTTSR at 1 (JA 102).

14

## 2. Search of Vehicle

"Warrantless searches are presumptively unreasonable[.]" *United States v. Karo*, 468 U.S. 705, 717 (1984). "A warrantless search is permitted, however, if it occurs incident to a lawful arrest." *United States v. Mapp*, 476 F.3d 1012, 1016 (D.C. Cir. 2007) (internal quotation omitted). Police officers may search a defendant's vehicle incident to an arrest "[s]o long as [the] arrestee is [a] 'recent occupant' of [the] vehicle." *Thornton v. United States*, 541 U.S. 615, 623-24 (2004). Doing so "'allow[s] officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.'" *Mapp*, 476 F.3d at 1019 (quoting *Thornton*, 541 U.S. at 623).

"'[A]n arrestee's status as a "recent occupant" may turn on his temporal or spatial relationship to the car at the time of the arrest and search.'" *Id.* at 1019 (quoting *Thornton*, 541 U.S. at 622). In *Mapp*, we held that the defendant qualified as a "recent occupant" because he was arrested "at the hood of" a police cruiser, *id.* at 1019, parked "directly behind" his vehicle, *id.* at 1014, and he was searched "around ten minutes after he was arrested," *id.* at 1019. We explained that "Mapp was close enough to his car to justify the search" and that the search "was not so separated in time or by intervening events that [it] cannot fairly be said to have been incident to the [arrest]." *Id.* (internal quotation omitted) (2d alteration in original).

We believe that Booker, like Mapp, qualifies as a "recent occupant," and accordingly, the search of his vehicle was proper. Although the record does not reveal Booker's precise location at the time of his arrest—which occurred after Officer Glenn returned from pursuing the fleeing passenger—he was only "three steps away" from the vehicle when Officer Wymbs handcuffed him. *Booker*, slip op. at 5. Thus, he "was close enough to his car to justify the search." *Mapp*, 476 F.3d at 1019; *see also United States v. Poggemiller*, 375 F.3d 686, 687-88 (8th Cir. 2004) (defendant was recent occupant when arrested

ten to fifteen feet from his car). Moreover, the record suggests that the search occurred immediately after the arrest. *See* Tr. 11/18/03, at 12 ("Q. What happened after he was placed under [arrest]? A. A search of the vehicle incident to his arrest revealed a black book bag."); *see also United States v. Weaver*, 433 F.3d 1104, 1106 (9th Cir. 2006) (ten to fifteen minute delay contemporaneous).

Because both the stop and the search of Booker's vehicle were lawful under the Fourth Amendment, we affirm the district court's denial of his motion to suppress.

### B. Guilty Plea Claim

Booker argues that the "factual basis for [his] plea was woefully inadequate." Appellant's Br. at 33. Specifically, he contends that the district court failed to expressly inquire into the "intent to distribute" element of his offense. Because Booker did not raise this objection below, we review his claim for plain error only. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *see also United States v. Washington*, 115 F.3d 1008, 1010 (D.C. Cir. 1997). Under that standard, we will remedy a trial court error only if there is "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights' . . . [and] (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). An error "affect[s] substantial rights" if it is "prejudicial." *Olano*, 507 U.S. at 734. To demonstrate prejudice in the context of a guilty plea, an appellant must "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

In his brief, *see* Appellant's Br. at 33, Booker expressly disavows that he is raising his claim under Federal Rule of

Criminal Procedure 11. *See* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). At oral argument, Booker explained that he did not rely on Rule 11 because he could not demonstrate, as required by *Dominguez Benitez*, that "but for the error, he would not have entered the plea." 542 U.S. at 83. Because, as he forthrightly concedes, Booker cannot make that showing, he perforce cannot demonstrate prejudice, *see Olano*, 507 U.S. at 734 (error "prejudicial" if it "affected the outcome of the district court proceedings"), and accordingly cannot demonstrate plain error.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*

ROGERS, *Circuit Judge*, dissenting: The question in this appeal is whether, despite a mistake of law, the police had an objectively reasonable valid basis for stopping Booker for violating District of Columbia regulations on vehicle tags. Although I agree that the officers had reasonable suspicion to investigate, upon seeing a temporary tag in the front windshield, whether Booker's car had a tag properly displayed on the rear, there is no evidence to support the conclusion that the officers' subsequent failure to notice the rear tag was objectively reasonable, much less to support speculation that the officers "were not close enough" to see the rear tag, Op. at 12.

"Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional." *United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006) (citing *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006); *United States v. Chanthasouxat*, 342 F.3d 1271, 1277-80 (11th Cir. 2003)); *see United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006). *But see United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006). A stop is lawful despite a mistake of law, however, if an objectively reasonable valid basis for the stop nonetheless exists. *See United States v. Southerland*, 486 F.3d 1355, 1358-59 (D.C. Cir. 2007); *see also United States v. Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006); *cf. United States v. Bookhardt*, 277 F.3d 558, 56 (D.C. Cir. 2002). "Whether a stop is reasonable turns on whether the facts, 'viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion' that a traffic violation has occurred." *Southerland*, 486 F.3d at 1359 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *see also United States v. Hill*, 131 F.3d 1056, 1059 (D.C. Cir. 1997). "[S]tops premised on mistakes of fact . . . generally have been held constitutional so long as the mistake is objectively reasonable." *Coplin*, 463 F.3d at 101 (citing *United States v. Miguel*, 368 F.3d 1150, 1153 (9th Cir. 2004); *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000)).

District of Columbia law provides that "[i]t shall be unlawful . . . [f]or any person to operate any motor vehicle . . . upon any public highway of the District of Columbia . . . [i]f such motor vehicle . . . does not have attached thereto and displayed thereon the identification tags required therefor." D.C. CODE § 50-1501.04(a)(1)(B). District of Columbia regulations provide that "vehicles identified by a dealer's tag . . . shall display only one (1) valid identification tag on the rear of the vehicle." MUN. REG. tit. 18, § 422.2. The evidence shows that upon seeing Booker's approaching car, one of three officers in an unmarked car driving in the opposite direction noticed the temporary tag in the front windshield. *See* Op. at 10. They decided to stop Booker's car because they thought that District of Columbia law required the tag to be displayed in brackets on the front of the car. *See id.* at 2 (citing Mem. Op. of Oct. 29, 2005 at 2). Despite their mistake of law, the officers nonetheless had an objectively reasonable basis to suspect that Booker did not have a properly displayed tag on the rear of his car and to investigate further. However, the record does not support the further conclusion that the officers' failure to notice the rear tag on Booker's car was objectively reasonable. The three officers were members of the auto theft unit of the Metropolitan Police Department, which investigates stolen cars, fraudulent tags, and other "things of that nature," Tr. Nov. 18, 2003 at 5, and they had ample opportunity, prior to stopping Booker, to determine whether there was a tag on the rear of Booker's car and failed to do so, instead relying on a mistake of fact that was no longer reasonable.

After noticing the temporary tag in the windshield of Booker's approaching vehicle, the officers "made a U-turn" in their car and "a series of turns" to catch up with Booker. *Id.* at 8. "From the point where [the officers] made the U turn until the point where [they] stopped [Booker after seeing his parked car]," there were no vehicles between the officers' car and

Booker's car. *Id.* "[T]o indicate to [Booker's] vehicle that it should stop," the officers "[p]ulled *directly behind it*." *Id.* (emphasis added); *see id.* at 7. When the officers finally caught up to Booker's car, after coming around a corner, Booker was in the process of exiting the car in that his feet were on the ground. *Id*. at 18-19.

The district court found that the initial stop of Booker was lawful. By the time one of the three officers reached Booker and handcuffed him, however, the district court found that "[Booker] had, at best, the chance to take three steps away from the car." *Id.* at 5. Further, the passenger did not start running until after the officer had exited his car, identified himself as a police officer, and ordered the men to stop. *Id.* at 2. Nonetheless, the district court found that the officers' failure to notice the rear tag was reasonable because when they pulled up to Booker's parked car, they were "distracted by the immediate departures of the driver and the passenger; indeed when the passenger took flight, their attention was understandably diverted." *Id*. at 9. This court adopts that finding, stating that prior to that time "the officers were not close enough" to see the rear tag. Op. at 12. Neither the district court's finding nor this court's speculation that the officers "were not close enough," *id.*, to see the rear tag can absolve the government of its failure to meet its burden to show that the stop was lawful. *See, e.g.*, *United States v. Davis*, 235 F.3d 584, 587 (D.C. Cir. 2000); *Am. Fed'n of Gov't Employees v. Skinner*, 885 F.2d 884, 894 (D.C. Cir. 1989).

First, there is no evidence that would demonstrate that the officers were unable to see the rear of Booker's car, and specifically the rear tag, at any point during the entire pursuit. To the contrary, the police followed the car for blocks, turned where the car turned, and, according to the officer's testimony, "pulled *directly behind it* ." Tr. Nov. 18, 2003 at 8 (emphasis

added). This court's reliance on a MapQuest image that it retrieved from the internet, *see* Op. at 2-3 & nn.2, 3, does not fill the evidentiary gap; the image shows roads running north and south and the curved road Booker's car traveled before it was parked, but it does not show that during the pursuit the officers were unable to see the rear tag on Booker's car. The district court made no findings that would support the court's inference that the officers "were not close enough" to see the rear tag on Booker's vehicle, *id.* at 12. At best, the district court hypothesized, on the basis of less "complicated [facts]," that the officers "might not have known [there was a dealer's tag] by following the car at some distance for a couple of blocks." Tr. Nov. 18, 2003 at 72.

Second, even assuming that the officer's testimony about the distance that Booker's car traveled could be interpreted to mean that Booker had already traveled three to four blocks by the time the officers made a U-turn to follow the car — as opposed to when the officers caught up to it after it was parked — this evidence does not support an inference that the officers were three to four blocks behind Booker's vehicle during the entire pursuit. *See* Op. at 12 (citing Tr. Nov. 18, 2003 at 8). Rather, the district court's finding understood the officer's testimony to be that Booker's vehicle was parked three to four blocks away from the place where the officers initially sighted it — not that the cars were separated by three to four blocks during the pursuit. *See* Mem. Op. at 2. Indeed, one of the officers testified that the police car and Booker's car were closer during the pursuit: "[We] [p]ulled *directly behind* [Booker's vehicle]" to indicate . . . that it should stop. Tr. Nov. 18, 2003 at 8 (emphasis added). When asked whether he "s[aw] [Booker] make any movements in the car" "[d]uring the three or four blocks that [Booker] traveled," the officer did not testify that he was not close enough to see any movements, much less to see the rear tag on the car, but instead answered, "No, I did not." *Id.*

at 16. If the officers were close enough at any point during the pursuit to see Booker's movements inside the car, then they were close enough to see whether there was a tag on the rear of his car.

Third, the fact that the officers had an objectively reasonable basis for investigating upon initially seeing the temporary tag in the front windshield is insufficient to show their suspicion continued to be reasonable forever. *See* Op. at 12-13. The court relies on the district court's finding that "after making a U-turn and pulling up next to [Booker's car], the officers' attention was distracted by the immediate departures of [Booker] and [the] passenger," so "there [wa]s no basis to fault the officers for having failed to study the rear tag and realize that it might have been a dealer tag." Mem. Op. at 9-10. But there was no testimony that the officers were distracted; as the officer explained, when they caught up with the car, Booker had exited the car only in the sense that his feet were on the ground and the passenger did not begin to run until after the officer had stepped out of the car, identified himself, and ordered the men to stop. Additionally, upon approaching Booker's parked car from the rear, the officers had to notice only that there was a rear tag — they did not need to ascertain what type of tag it was, which would have required closer examination — because having seen a temporary tag in the front windshield, seeing a tag on the rear of the car would dispel the officers' initially reasonable suspicion that Booker was violating District of Columbia law. From the evidence that the officers followed the car for several blocks and then approached the parked car from behind and stopped, it is inconceivable that the officers from the auto theft unit would not have noticed the rear tag.

As Booker argued to the district court, and that court ignored, and as he argues on appeal, "there is no evidence in the record that supports the district court's speculation about the

6

officers' actions," as neither of the two officers who testified claimed that they or the third officer were "'distracted' as they pulled up behind car." Appellant's Br. at 20; *see* Tr. Nov. 18, 2003 at 64. "Neither [did the officers] testif[y] that they were unable to determine that the rear tag was also a dealer's tag," *id.*, much less that they were unable to see a rear tag at all. Because the evidence does not support the conclusion that a reasonable officer, particularly one trained to look for stolen cars and fraudulent tags, would not have glanced at the rear of Booker's car or not had an opportunity to do so at any point during the pursuit to determine whether there was a rear tag, the district court erred in denying Booker's motion to suppress the evidence found in the car. Accordingly, I respectfully dissent.