Andre **DAWKINS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 06–CF–911.

District of Columbia Court of Appeals.

Argued Feb. 13, 2008.
Resubmitted July 9, 2009.
Decided Jan. 21, 2010.

---

Jonathan W. Anderson, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the briefs, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the initial brief was filed, Channing D. Phillips, Acting United States Attorney at the time the Supplemental Brief was filed, and Roy W. McLeese III, Assistant United States Attorney, were on the briefs, for appellee.

Before RUIZ, Associate Judge, and SCHWELB and FARRELL,* Senior Judges.

RUIZ, Associate Judge:

Andre Dawkins appeals the trial court's denial of his motion to suppress evidence, and we consider the proper scope of a search of a vehicle incident to arrest in light of the Supreme Court's decision in *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).[1]

---

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

1. The court *sua sponte* stayed consideration of this appeal pending the Supreme Court's decision in *Gant.* Upon the Court's decision, issued on April 21, 2009, we ordered the parties to file supplemental briefs. See Order, dated April 24, 2009. Supplemental briefing was completed on July 9, 2009, and the appeal was resubmitted for decision at that time.

Appellant was arrested for possessing a marijuana blunt[2] while he was standing outside his car. In a search incident to arrest, the police found additional marijuana in his pants pocket. The police also searched appellant's car and found a loaded gun underneath the passenger seat with a rock of cocaine inside the barrel of the gun. Appellant was charged with carrying a pistol without a license,[3] possession of an unregistered firearm,[4] unlawful possession of ammunition,[5] possession of marijuana,[6] and possession of cocaine.[7]

The items found during the searches of appellant and his car formed the basis for a warrant to search appellant's home. Items found inside the house when the warrant was executed in turn led to additional charges for possession of cocaine,[8] possession of marijuana,[9] unlawful possession of ammunition,[10] and possession of drug paraphernalia.[11]

Appellant entered a guilty plea to all the charges on the condition that he may appeal the trial court's denial of his suppression motion as it related to the evidence found in the car, which supplied the basis for the further search of his house (and the contraband found there). We conclude that the search of appellant's car was lawful and affirm the judgment.

## I. Statement of the Facts

At the hearing on the suppression motion, Officer Leroy Myers testified that on October 1, 2005, the Metropolitan Police Department's vice unit conducted an undercover buy-bust operation in the 2200 block of Savannah Street in Southeast Washington, D.C. Around 3:25 p.m., a confidential informant ("CI")[12] notified Officer Myers that a heavy-set black man who was standing next to a red/burgundy car had marijuana. From a distance of 20–25 feet, Officer Myers saw appellant, who fit the lookout description, leaning on the passenger side of a red car.

Officer Myers testified that he radioed the arrest team "probably more than two times." In the first radio call, he gave a description of the car and appellant's appearance. The arrest team arrived within 1–2 minutes of the initial call. Between the radio call and the arrest team's arrival on the scene, Officer Myers saw appellant open the passenger-side door and "lean[ ] into the vehicle [with] the upper part of the body ... and c[o]me out of the vehicle and ... close[ ] the door." Before the arrest team arrived on the scene, he called over the radio to report what he had seen.

Officer Derrick Phillip was a member of the arrest team. He testified that as the arrest team approached, appellant threw down a cigarette and tried to cover it up with his feet. According to Officer Phillip, the cigarette appeared to be unevenly rolled, suggesting that it had been altered for smoking marijuana. Appellant was immediately placed under arrest.

2. A blunt is a hollowed-out cigar filled with marijuana.

3. D.C.Code § 22–4504(a) (2001).

4. D.C.Code § 7–2502.01(a) (2001).

5. D.C.Code § 7–2506.01(3) (2001).

6. D.C.Code § 48–904.01(d) (2001).

7. *Id.*

8. *Id.*

9. *Id.*

10. D.C.Code § 7–2506.01(3) (2001).

11. D.C.Code § 48–1103(a) (2001).

12. According to Officer Myers, CI was a reliable informant who had worked with the vice unit for several years.

Officer Phillip had heard the second radio call as suggesting that "I need[ed] to look inside the vehicle [because] prior to us pulling up, [Officer Myers] observed [appellant] go inside the front-passenger seat area and immediately exit out the vehicle and close the door." Officer Phillip found the car door locked so he retrieved the key from another officer, who had found it when he searched appellant, and opened the passenger door. When he opened the door, appellant exclaimed, "Why are you guys going to go in my car?" Officer Phillip found a gun underneath the passenger seat with rock cocaine inside the barrel of the gun. He also found appellant's family photo in the glove box and appellant's personal mail in the trunk.[13]

Appellant testified that on October 1, 2005, he drove his car [14] to Savannah Street in Southeast. He parked his car and bought some cigars at a nearby grocery store. Other people were out in the street as he was standing on the sidewalk. Within 30–45 minutes of his arrival, the police pulled up near him. He was startled and admitted that he dropped a marijuana blunt—which he had rolled himself—between the wheel and the curb, but denied that he tried to cover it up with his feet. The police officer told him to put his hands on the car and placed plastic handcuffs on him. The officer searched him and retrieved money and his car key from his pockets. One of the officers took the key and opened his car, which was locked.

Appellant's friend, Thomas Howell, testified for the defense. He was washing clothes at a laundromat on Savannah Street, S.E., and had chatted with appellant for about 15 minutes. Howell had parked his car behind appellant's, and was sitting in the back of his car when eight police officers surrounded appellant. He saw the police arrest appellant, and take his car key and wallet. Howell testified that prior to the arrest, he saw appellant lean against his car with a box of tobacco in his hand, but denied seeing appellant enter the car at any time.

The trial court denied the defense motion to suppress the gun, cocaine, family photograph, and mail found inside appellant's car. The court found that the police collectively had information that appellant possessed marijuana, and had probable cause to arrest him when they saw him drop the blunt. The trial court concluded that the police validly searched the vehicle incident to arrest because appellant was an "occupant" of the vehicle, noting that he (1) had a "possessory stance" as he leaned against the car, (2) had entered the car, and (3) was in the car's immediate vicinity.

## II. Analysis

"[O]ur standard of review for a trial court's ruling on a motion to suppress tangible evidence requires that the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling. While factual findings

13. Officer Leroy Rollins, another member of the arrest team, had testified at a previous probable cause hearing and confirmed Officer Phillip's account. Officer Rollins testified that he saw appellant, who matched the description called over the radio, lean inside the car for a "few seconds," then drop a "dark object" on the ground, and try to cover it up with his left foot. When appellant was searched, there was marijuana in his pants pocket. As the officers tried to open the car, appellant said, "Why are you going to go in my car?" Underneath the passenger seat the officers discovered a loaded gun with rock cocaine inside the barrel. The police could not see the gun from outside the car, and appellant was in handcuffs when the car was searched.

14. Appellant testified that although the car was registered to his girlfriend, he was the person who drove it.

will not be disturbed if supported by substantial evidence, conclusions of law are reviewed *de novo.*" *Howard v. United States,* 929 A.2d 839, 844 (D.C.2007) (citations omitted).

■ To effectuate the Fourth Amendment's prohibition against unreasonable searches and seizures, "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure ... [and] in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (citations omitted); *see United States v. Karo,* 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) ("Warrantless searches are presumptively unreasonable...."). One such exception to obtaining a valid warrant is the "search incident to arrest." In *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weap-

on or evidentiary items must, of course, be governed by a like rule.

*Id.* Pursuant to *Chimel's* reasoning, the Court has further held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (footnote omitted). Following *Belton,* we have held that the police may not search a car without probable cause if a person locks the car and walks away and the police did not initiate contact with the person while he was in the car. *See Lewis v. United States,* 632 A.2d 383, 386–88 (D.C.1993). We explained that "[t]he Supreme Court's references in *Belton* to 'a search ... after the arrestees are no longer in [the automobile]' and to 'recent occupant[s]' of an automobile, clearly pertain to occupants who have been removed by the police...." *Id.* at 386 (citations omitted). In *Lewis,* we concluded that since "appellant had left the vehicle and become a pedestrian before the police officer initiated contact with him[,] he was not an 'occupant' within the meaning of *Belton.*" *Id.* at 388 (citation omitted).

The Supreme Court revisited *Belton* in *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), where it rejected the "contact initiation" approach taken by this court in *Lewis. Id.* at 623, 124 S.Ct. 2127. The Court held that "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here,[15] officers may search

---

**15.** The facts in *Thornton* were as follows: Officer Deion Nichols of the Norfolk, Virginia, Police Department, who was in uniform but driving an unmarked police car, first noticed petitioner Marcus Thornton when petitioner slowed down so as to avoid driving next to him. Nichols suspected that

petitioner knew he was a police officer and for some reason did not want to pull next to him. His suspicions aroused, Nichols pulled off onto a side street and petitioner passed him. After petitioner passed him, Nichols ran a check on petitioner's license tags, which revealed that the tags had been

that vehicle incident to the arrest." *Id.* at 624, 124 S.Ct. 2127. The Court added that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search.'" *Id.* at 622, 124 S.Ct. 2127.

Although we have not had the occasion to apply *Thornton,* the United States Court of Appeals for the District of Columbia Circuit has. In *United States v. Mapp,* 375 U.S.App. D.C. 79, 476 F.3d 1012 (D.C.Cir.2007), the court held that the defendant was a "recent occupant" of a car for purposes of *Thornton,* because he was arrested "at the hood of" a police cruiser that was parked "directly behind" the car in question and the search occurred "around ten minutes after he was arrested." *Id.* at 81–86, 476 F.3d at 1014–19. The court explained that the arrestee was "close enough to his car to justify the search" and that the search was not "so separated in time or by intervening events that [it] cannot fairly be said to have been incident to the [arrest]." *Id.* at 86, 476 F.3d at 1019. In *United States v. Booker,* 378 U.S.App. D.C. 126, 496 F.3d 717 (2007) (*cert. granted,* judgment vacated), and case remanded for further consideration in light of *Gant, Booker v. United States,* 129 S.Ct. 2155, 173 L.Ed.2d 1152 (2009), the D.C. Circuit followed *Mapp's* reasoning and concluded that the arrestee was a "recent occupant" because "he was only 'three steps away' from the vehicle when [the police] handcuffed him ... [and because] the record suggests that the search occurred immediately after the arrest." *Id.* at 134, 496 F.3d at 725.

Recently, in *Gant,* the Supreme Court rejected an interpretation of *Belton* that "authoriz[es] a vehicle search incident to every recent occupant's arrest," holding that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 129 S.Ct. at 1719. The Court also recognized an alternative rationale, however, that "does not follow from *Chimel,*" but is based on "circumstances unique to the vehicle context [that] justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127).

 Under the D.C. Circuit Court's reasoning in *Mapp* and *Booker,* appellant was a "recent occupant," pursuant to *Thornton's* test of "temporal or spatial relationship to the car at the time of the

---

issued to a 1982 Chevy two-door and not to a Lincoln Town Car, the model of car petitioner was driving. Before Nichols had an opportunity to pull him over, petitioner drove into a parking lot, parked, and got out of the vehicle. Nichols saw petitioner leave his vehicle as he pulled in behind him. He parked the patrol car, accosted petitioner, and asked him for his driver's license. He also told him that his license tags did not match the vehicle that he was driving.

Petitioner appeared nervous. He began rambling and licking his lips; he was sweating. Concerned for his safety, Nichols asked petitioner if he had any narcotics or weapons on him or in his vehicle. Peti-

tioner said no. Nichols then asked petitioner if he could pat him down, to which petitioner agreed. Nichols felt a bulge in petitioner's left front pocket and again asked him if he had any illegal narcotics on him. This time petitioner stated that he did, and he reached into his pocket and pulled out two individual bags, one containing three bags of marijuana and the other containing a large amount of crack cocaine. Nichols handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car. He then searched petitioner's vehicle and found a BryCo 9–millimeter handgun under the driver's seat.

541 U.S. at 617–18.

arrest and search." 541 U.S. at 622, 124 S.Ct. 2127. Appellant was leaning against his vehicle when the police approached and arrested him. The undercover officer saw appellant open the car door, briefly lean inside, close the door, and resume leaning against the car. The police searched appellant's car immediately after the arrest—which had happened within "a matter of feet" of the car—whereupon appellant exclaimed, "Why are you guys going to go in my car?" A sufficiently proximate relationship existed between appellant and his car so as to establish that he was a "recent occupant" at the time he was arrested.

But, as the Supreme Court said in *Gant,* that is not enough, and the warrantless search of an automobile incident to arrest is constitutionally permissible only if the police reasonably believe either that the suspect could have such access to his car as would pose a risk to the safety of the officers or potential destruction of evidence, as permitted by *Chimel,* or that evidence of the offense for which he was arrested could be found in the car, pursuant to *Thornton.* 129 S.Ct. at 1719. Here, appellant was arrested for possession of marijuana—for which the police had probable cause—after seeing him drop a blunt on the ground. The police had noticed that the blunt was unevenly rolled, which suggested that appellant had manipulated the cigar to smoke marijuana. We do not think that *Chimel* provides a basis to search the car incident to arrest because the car was locked (and appellant handcuffed) when he was arrested, and therefore did not pose a risk to the safety of the officers or the integrity of any evidence. But *Thornton* does furnish that basis, because having observed appellant lean into the car and close the door shortly before he was seen with a marijuana blunt, the officers reasonably could have believed that appellant had additional marijuana or

drug paraphernalia in the car such that it was "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant,* 129 S.Ct. at 1719.

For the foregoing reasons, the judgment of conviction is

*Affirmed.*